KITCHENS, Justice,
Specially Concurring:
¶ 29. I agree that Burdette’s conviction must be affirmed, as he has not raised any issues warranting reversal. I write separately to ensure that my vote in no way implies any sort of approval of the improperly admitted evidence.
¶ 30. I agree with the majority that a plain-error review is appropriate, because the manner in which certain evidence was presented immediately calls to mind the accused’s constitutional right to confront the witnesses against him. U.S. Const, amend. VI; Miss. Const, art. 3 § 26. The officer’s testimony and admission of the laboratory report should prompt us to question the constitutional implications of this evidence, especially in the context of the facts presented. Detective Williford testified that someone from the company that manufactured Burdette’s handgun had said the pistol was capable of firing .380 ammunition, but the police were unable to obtain written confirmation from the manufacturer. In addition to this unverified hearsay, the crime laboratory report matching Burdette’s nine-millimeter pistol to all of the shell casings and most of the bullets was admitted into evidence via Detective Williford, without any testimony from the person who had performed the testing. Notably, there was evidence that might cause a juror to question Williford’s testimony, including testimony that Smith, the shooting victim, was known to carry a .380 calibre pistol and that Smith had threatened to kill Burdette. Burdette also claimed that he had shot Smith in self-defense, and seven .380 casings were found in and around his car. However, Bur-dette’s gun was a Sig Sauer nine-millimeter pistol, and the evidence offered as proof that this weapon was capable of firing .380 ammunition is the very evidence claimed by Burdette to have violated the Confrontation Clause.
¶ 31. Despite the curious nature of this evidence, it would be a stretch to find plain error when, as here, it turned out to be consistent with the defendant’s prior statements and his trial testimony. Burdette never said that Smith had fired a weapon, and Burdette never disputed that he had fired the nine-millimeter handgun recov *306 ered by law enforcement personnel and received into evidence at trial. The evidence now complained of on appeal did not conflict with Burdette’s version of the facts. Therefore, we cannot say that the admission of this evidence resulted in a “manifest miscarriage of justice,” when, based on the record before us, there was no apparent contradiction between this evidence and Burdette’s account of relevant events. See, e.g., Cox v. State, 793 So.2d 591, 599 (Miss.2001) (“To constitute plain error, the trial court must have deviated from a legal rale, the error must be plain, clear or obvious, and the error must have prejudiced the outcome of the trial.”) (citing Grubb v. State, 584 So.2d 786, 789 (Miss.1991); Porter v. State, 749 So.2d 250, 260-61 (Miss.Ct.App.1999)).
¶ 32. Additionally, I have significant reservations regarding the testimony from another officer that, in his experience, the Sig Sauer nine-millimeter was capable of firing .380 calibre ammunition. Without any evidence that the officer’s experience qualified him as an expert on this subject, his opinion testimony did not meet the legal requirements for admission. See M.R.E. 701 (opinion testimony by lay witness); M.R.E. 702 (testimony by experts). Whether a firearm with a rifled barrel that is of a particular calibre is capable of firing ammunition of a different calibre is a technical question that may have numerous subparts, including, but not necessarily limited to, whether the weapon merely is capable of firing such other-calibre ammunition one time, or whether it is capable of doing so multiple times, semi-automatically, without the necessity of reloading manually after each shot. It is the sort of question that, in a trial setting, usually would have been submitted to an expert, or to multiple experts, in advance of the trial, and subjected to appropriate scientific study by such expert(s) in accordance with established testing procedures. A different set of testing procedures likely would be required to ascertain whether it was possible for a certain firearm to have fired other-calibre ammunition. Forensic firearms examiners might also be called upon to determine whether a certain firearm had fired ammunition of the same calibre, but of different brands or configurations or comprised of different components.
¶ 33. However, there was no objection to this opinion testimony. Therefore, like the laboratory report and the unverified statements of the pistol’s manufacturer regarding the gun’s firing capabilities, the admission of this evidence does not warrant reversal on appeal absent plain error. Given that there was no apparent conflict between this evidence offered by the State and the defendant’s self-defense claim, it cannot be said that there was an obvious, prejudicial effect on the jury’s verdict. See, e.g., McGee v. State, 953 So.2d 211, 215 (Miss.2007) (explaining that plain error requires reversal if “the error results in a manifest miscarriage of justice”) (citing Williams v. State, 794 So.2d 181, 187-88 (Miss.2001), ovemled on other grounds, Brown v. State, 995 So.2d 698, 703 (Miss.2008)). It is not difficult to imagine that, under a different set of facts, this evidence might very well require reversal.
DICKINSON, P.J., CHANDLER AND KING, JJ., JOIN THIS OPINION.