# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CT-00443-SCT

*MARY REED EVANS*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 02/20/2007 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER, III |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOSEPH JOSHUA STEVENS, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | JOHN RICHARD YOUNG |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE MONROE COUNTY CIRCUIT COURT IS REVERSED AND THIS CASE IS REMANDED FOR A NEW TRIAL - 01/21/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     The Justice Court of Monroe County convicted Mary Reed Evans of driving under the influence (DUI), first offense. Evans appealed to the Circuit Court of Monroe County. After a trial de novo without a jury, the circuit court came to the same result. Evans appealed, and the Court of Appeals, in a six-to-three decision, reversed the conviction and remanded the

matter for a new trial. The Court of Appeals found that the circuit court had erred in its application of **Porter v. State**, 749 So. 2d 250 (Miss. Ct. App. 1999), and also found that Dr. A. K. Rosenhan was qualified to give his expert opinion. The matter is now before this Court on writ of certiorari, and we find error in part of the Court of Appeals' analysis. We therefore reverse the judgment of the Monroe County Circuit Court and remand this matter for a new trial, although for different reasons than those of the Court of Appeals, which also reversed and remanded.

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

¶2.     Late in the afternoon of July 19, 2006, Evans, who lives in Prairie, Mississippi, drove to pick up her friend, Julann Callender, who lives in Aberdeen, Mississippi.[1] The two women traveled to Tupelo to shop at Sam's Club. Once they finished shopping, they went to Woody's, a restaurant and lounge in Tupelo, where they stayed from approximately 6:00 p.m. until 11:00 p.m. During this time, they had dinner, and Evans said she drank four Bud Lights. Both women claim the only alcohol they consumed that evening was at Woody's. They left the restaurant and drove back to Aberdeen. At approximately midnight, Evans dropped off Callender at her home. Callender testified that she offered Evans a beer as she was leaving, which Evans accepted. Callender claimed that Evans did not appear to be intoxicated.

¶3.     Evans then proceeded home to Prairie along Highway 382. A severe storm that evening had left trees and power lines down in the area. Approximately two miles from

---

[1] The facts are taken in large part from the Court of Appeals decision.

Evans's home, Mississippi Highway Patrolman Andrew Sisk had the eastbound lane of Highway 382 partially blocked as emergency vehicles were cleaning the debris from the highway. Officer Sisk was inside his patrol car with his headlights and blue lights on. He testified he was attempting to redirect traffic to a county road. When Evans came upon this area in the westbound lane, she proceeded slowly, but she did not stop her vehicle. Officer Sisk, wanting her to stop, tried to get Evans's attention by shining his spotlight on her and in her car, but to no avail. Feeling she should have known to stop, Officer Sisk pulled Evans over approximately one-half mile from the area. When he approached her vehicle, he noticed the smell of alcohol emanating from Evans's vehicle. He saw an open beer can on the console (the one Callender had given Evans); however, Evans testified she had not consumed any of it. Officer Sisk also saw three or four unopened cans of beer in Evans's back seat. When asked whether she had had any alcohol to drink that evening, Evans admitted to Officer Sisk she had been drinking beer at Woody's that evening. He proceeded to administer an alcohol test with a portable intoxilyzer device, which detected the presence of alcohol on her breath, but he did not conduct any field sobriety tests. Evans was then arrested and taken to the Monroe County Sheriff's Office, where she agreed to have a blood alcohol concentration (BAC) test on the Intoxilyzer 8000 machine.

¶4.    However, before Evans and Officer Sisk departed for the sheriff's office, they had to wait for a wrecker from Aberdeen to tow Evans's car, as this was standard operating procedure. Evans's DUI ticket showed the time of the stop as 12:50 a.m. By the time Evans had completed the paperwork at the sheriff's office and the second BAC test was

3

administered,[2] it was 1:58 a.m. After a delay of one hour and eight minutes from the time she was pulled over until the time of the test, Evans's BAC was determined to be .09%, or .01% over the legal limit of .08%, pursuant to Mississippi Code Section 63-11-30(1)(c) (Rev. 2004). Therefore, she was charged with DUI, first offense.

¶5.     The Justice Court of Monroe County convicted Evans of DUI, first offense. She appealed the conviction to the Circuit Court of Monroe County, which held a trial de novo without a jury, again finding Evans guilty. Prior to the trial, the State moved in limine to exclude the testimony of the defense's expert witness, Dr. A. K. Rosenhan, who was to testify regarding the absorption rate of alcohol. The State argued that since this case was a DUI-per-se violation,[3] the defense was prohibited from introducing evidence of alcohol consumption. The State continued that, in order for the expert to formulate an opinion about Evans's absorption rate, evidence would have to be introduced about her consumption of alcohol, which the State claimed is prohibited by *Porter v. State*, 749 So. 2d 250 (Miss. Ct. App. 1999). Therefore, the State moved to prohibit the introduction of any evidence from either expert or lay witnesses who would testify as to the manner or timing of her consumption of alcohol. After the defense argued *Porter* was inapplicable to the present

---

[2] Officer Sisk testified that he administered two BAC tests to Evans on the Intoxilyzer 8000 machine: one at 1:56 a.m. registering .104% and the second one at 1:58 a.m. registering .099%. According to Sisk, Evans's ticket was based on the second test, since it was the lowest reading.

[3] A "DUI-per-se" violation means a violation that should be charged as an offense under Section 63-11-30(1)(c), "when test results are available and are sufficient to give the officer probable cause" to believe that the person is operating a vehicle with a BAC of .08% or more. *Leuer v. City of Flowood*, 744 So. 2d 266, 268 (¶7) (Miss. 1999) (quoting *Young v. City of Brookhaven*, 693 So. 2d 1355, 1363-64 (Miss. 1997) (citation omitted)). *See* Miss. Code Ann. § 63-11-30(1)(c) (Rev. 2004).

4

case, the circuit court judge granted the State's oral motion in limine. However, Dr. Rosenhan was allowed to proffer his testimony for the sole purpose of creating a record. Evans appealed, and the Court of Appeals, in a six-three decision, reversed the conviction and remanded the matter for a new trial based on the perceived misapplication of the *Porter* case and the qualifications of Dr. Rosenhan as an expert witness. This Court granted the State's petition for a writ of certiorari.

**ANALYSIS AND DISCUSSION OF THE ISSUES**

¶6.    The standard of review for the admission or exclusion of evidence is an abuse of discretion. *Miss. Transp. Comm'n v. McLemore,* 863 So. 2d 31, 34 (¶ 4) (Miss. 2003). Further, "the admission of expert testimony is within the sound discretion of the trial judge. Therefore, the decision of a trial judge will stand 'unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion.' " *Id.* (internal citations omitted). Moreover, a motion in limine should be granted only if "(1) the material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury." *Whittley v. City of Meridian,* 530 So. 2d 1341, 1344 (Miss. 1988). Additionally, "[t]he discretion of the trial judge must be exercised within the boundaries of the Mississippi Rules of Evidence." *Beech v. Leaf River Forest Prods., Inc.,* 691 So. 2d 446, 448 (Miss. 1997) (citing *Johnston v. State,* 567 So. 2d 237, 238 (Miss. 1990)). *See* Miss. R. Evid. 103(a).

    I.      **WHETHER THE COURT OF APPEALS ERRED IN THE APPLICATION OF THE *PORTER* CASE.**

¶7. The issue here pertains to Evans's desire to introduce testimony concerning the precise measurement of alcohol in her bloodstream at the time she was driving and arrested. The State argued at trial that *Porter v. State*, 749 So. 2d 250 (Miss. Ct. App. 1999), bars any attempt to introduce evidence that precludes a finding that Evans was guilty under Section 63-11-30(1)(c) of the Mississippi Code, which is the DUI-per-se portion of the statute governing blood-alcohol levels. *See* Miss. Code Ann. § 63-11-30(1)(c) (Rev. 2004). The defense counters that *Porter* is distinguishable and inapplicable to the matter at hand. Evans argues that the holding in *Porter* bars only the admission of evidence in an attempt to prove that alcohol consumption did not impair the driver. Evans claims that she is attempting to introduce evidence that her BAC was below the legal limit at the time she was driving, and she is not attempting to prove that her alcohol consumption failed to impair her driving. This Court agrees with Evans's assertion and with the Court of Appeals opinion[4] regarding the inapplicability of the *Porter* decision.

¶8. The circuit court judge accepted the interpretation of *Porter* offered by the State whereby the defense is prohibited from introducing evidence from either expert or lay witnesses regarding alcohol consumption because this is a "DUI-per-se case," and an admissible Intoxilyzer test result showed Evans's BAC to be over the legal limit. The State explained, and the circuit court agreed, that if this evidence on alcohol consumption was inadmissible, Dr. Rosenhan's expert testimony then became irrelevant. This is because, in order for the expert to formulate his opinion about Evans's BAC at the time she was pulled

---

[4] Portions of the analysis concerning issue number one are taken in whole or in part from the Court of Appeals' majority decision.

over, evidence on consumption would have to be admitted to apply his retrograde-extrapolation formula[5] to the facts of the case. The Court of Appeals reversed the circuit court and held that *Porter* was inapplicable to this case because Evans was attempting to introduce evidence to prove her blood-alcohol content was below the legal limit, rather than attempting to prove she was not intoxicated.

¶9.     We agree with the Court of Appeals and Evans that *Porter* is distinguishable and not controlling in the instant case. In *Porter*, after being arrested, the defendant submitted to an Intoxilyzer analysis of his BAC at the police station. *Porter*, 749 So. 2d at 253. His BAC was determined to be .164%. *Id.* at 253 (¶5). Porter sought to present evidence that would rebut what he termed "the 'presumption' that his blood alcohol content of .164% impaired his ability to operate his vehicle." *Id*. at 254-55 (¶13). There was no issue regarding a lapse of time between Porter's arrest and the test. At trial, the circuit court granted the State's motion in limine, and the Court of Appeals found no error. *Id*. at 255 (¶15).

¶10.    To properly understand *Porter***'s** holding in light of our current DUI laws, we must analyze the history of the DUI statute. As the *Porter* court explained, since an amendment to the DUI statutes in 1983, it is a "per se" violation to operate a vehicle when the defendant's BAC, as shown through a chemical analysis, is over the legal limit, which at that time was .10%.[6] *Id.* at 255 (¶14) (citing *Fisher v. City of Eupora*, 587 So. 2d 878, 888

---

[5]Although the Court of Appeals has addressed the issue and application of retrograde extrapolation, this Court has not yet ruled on the admissibility of such testimony.

[6] In 2002, this standard was changed to .08%. *See* Miss. Code Ann. § 63-11-30 (1)(c) (Rev. 2004).

(Miss. 1991)). This Court explained in *Fisher* that since 1983, there is no longer a statutory "presumption" that a person is intoxicated if he is over the legal limit for BAC, but instead, it is a "per se" violation under Section 63-11-30. *Id.* This is the "presumption" that Porter was attempting to rebut. Further, in 1991, Section 63-11-39(2), a statute allowing the introduction of evidence on whether or not a person was under the influence of intoxicating liquor which impaired a person's ability to operate a motor vehicle, was repealed. *Id.* at 255 (¶15). Because of this repeal, the Court of Appeals found Porter's argument nullified, as he could not enter evidence that he was not impaired, because he was prosecuted for a DUI-per-se violation, and not impairment. *Id.*[7]

¶11.    Currently, the pertinent Mississippi DUI statute provides in part that it is unlawful for any person to drive or operate a vehicle in Mississippi if he is: (a) under the influence of intoxicating liquor; . . . or (c) has an alcohol concentration of eight one-hundredths percent (.08%) or more for persons at or above the legal age to purchase alcoholic beverages in Mississippi. Miss. Code Ann. § 63-11-30(1)(a) and (c) (Rev. 2004). Section 63-11-30(1)(a) is referred to as "common-law DUI," and it is distinguishable from Section 63-11-30(1)(c), which is referred to as "per-se DUI." "Common-law DUI" is often used to prosecute defendants when BAC test results are unavailable, or the defendant's BAC tests are under

---

[7] In his separate opinion, Justice Kitchens correctly points out that the admissibility of evidence is to be governed by the Mississippi Rules of Evidence. *See **Whitehurst v. State***, 540 So. 2d 1319, 1323 (Miss. 1989). Nonetheless, this Court has followed statutory provisions regarding evidentiary matters that are not in conflict with the Mississippi Rules of Evidence. Miss. R. Evid. 1103 ("[a]ll evidentiary rules, whether provided by statute, court decision or court rule, which are *inconsistent* with the Mississippi Rules of Evidence are hereby repealed.") (emphasis added).

8

the legal limit, but there is sufficient evidence to prove the defendant's ability to operate a vehicle was impaired by the consumption of alcohol. *Leuer*, 744 So. 2d at 268 (¶¶6-7). This evidence of impairment may include slurred speech, bloodshot eyes, or erratic driving. However, in Evans's case, we do not have any such "impairment" evidence, only her BAC level. Thus, Evans was not prosecuted under the common-law DUI statute, but for a per-se violation under Section 63-11-30(1)(c).

¶12.    We read *Porter* to stand for the proposition that in a DUI-per-se case, the defendant cannot offer evidence regarding whether or not he was under the influence which would impair his ability to drive a vehicle.[8]   However, we do not read *Porter* as holding that in a DUI-per-se case, evidence regarding the consumption of alcohol cannot be introduced to prove whether or not the defendant was at a certain BAC when she was driving a motor vehicle.  In the instant case, Evans was not offering Dr. Rosenhan's testimony on retrograde extrapolation to prove she was not impaired when she was pulled over.  Instead, she offered it to prove that she did not have a BAC of .08% or more when she was pulled over; thus, she did not violate Section 63-11-30(1)(c).

¶13.    The State interprets Evans's argument to be that, although her BAC was over the legal limit when she was tested, she was not impaired an hour earlier when she was driving; thus, Evans is really trying to prove, through Dr. Rosenhan's testimony and other evidence, that her alcohol consumption did not impair her ability to drive.  We find the State misinterprets Evans's argument and her immediate purpose for introducing the evidence.  Evans offered

---

[8]  However, this type of evidence properly could be offered for a violation of Section 63-11-30(1)(a).

the evidence to prove her BAC was not above the legal limit when she was pulled over. Thus, we agree with the analysis and decision of the Court of Appeals finding that *Porter* is inapplicable in this matter, because Evans was not offering evidence to prove she was not impaired.

## II. WHETHER THIS COURT MAY UNDERTAKE THE ISSUE OF THE QUALIFICATIONS OF THE EXPERT WITNESS.

¶14. The issue here centers around whether the trial court made a proper determination on the qualifications of Dr. Rosenhan as an expert witness. The Court of Appeals undertook the issue and found Dr. Rosenhan to be a qualified expert witness. However, this Court finds that the trial judge never made a determination of the qualifications of Dr. Rosenhan as an expert witness. He also made no finding on the reliability of his testimony. The trial judge is the gatekeeper who assesses the value of the testimony. *Tunica County v. Matthews*, 926 So. 2d 209, 213 (Miss. 2006).

¶15. The trial judge ruled that the testimony of Dr. Rosenhan was not admissible due to the holding in the *Porter* case. However, as the Court of Appeals correctly found, *Porter* is inapplicable to the facts of this case. In light of this, we must determine whether the trial judge ruled on the qualifications of Dr. Rosenhan as an expert witness and the admissibility of his testimony. In reviewing the record, it is apparent that the trial judge never made a finding on the qualifications of Dr. Rosenhan as an expert witness. Neither did he review the reliability of the testimony consistent with the Mississippi Rules of Evidence. The trial judge stated that he was allowing a record to be made and that was "the only purpose for hearing" the evidence. Since the trial judge is vested with gatekeeping responsibility, it is his duty to

determine whether or not a witness is qualified and whether the testimony is reliable, consistent with the standard set out in the Rules of Evidence. *See Tunica County*, 926 So. 2d at 213. The decision by the Court of Appeals on the qualifications of Dr. Rosenhan as an expert was inappropriate, because the circuit court had not made a determination on Dr. Rosenhan's qualifications to testify. Since the trial court is vested with the responsibility of making an initial determination, and this was not done, we must disagree with the Court of Appeals on this issue. Therefore, this Court finds that the Court of Appeals erred in making a determination of the qualifications of Dr. Rosenhan, because the issue was not properly before it.

¶16.    We affirm the judgment of the Court of Appeals, although for different reasons, and we reverse the conviction and sentence of the circuit court. We remand this matter to the circuit court for a new trial consistent with this opinion.

¶17.    **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE MONROE COUNTY CIRCUIT COURT IS REVERSED AND THIS CASE IS REMANDED FOR A NEW TRIAL.**

**WALLER, C.J., CARLSON, P.J., RANDOLPH, LAMAR, AND CHANDLER, JJ., CONCUR. KITCHENS, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, P.J. AND DICKINSON, J.**

**KITCHENS, JUSTICE, CONCURRING IN RESULT ONLY:**

¶18.    With respect to the majority, I disagree that the question that must be answered by this Court is whether the Court of Appeals erred in its application of *Porter v. State,* 749 So. 2d 250 (Miss. Ct. App. 1999), a Court of Appeals opinion that this Court has never addressed. The only question to be addressed by this Court is whether the trial court erred in not

allowing Evans to present evidence that her blood alcohol level was below the legal limit of 0.08% at the time she was driving an automobile.

¶19.   While I agree with the majority opinion that ***Porter*** "is inapplicable to the facts of this case," and that ***Porter*** is not controlling of any issue in the case at hand, I am puzzled by the majority's utilization of ***Porter*** as the foundation of its analysis and its apparent eagerness to embrace ***Porter***'s reasoning.  That said, I do concur with the majority's conclusion that Evans is entitled to present evidence in an effort to disprove the State's contention that her blood alcohol level was over the legal limit at the time she was driving an automobile.

¶20.   Accordingly, I concur with the majority in result only.

**GRAVES, P.J., AND DICKINSON, J., JOIN THIS OPINION.**