# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-KA-00742-SCT

*JEROME CLEMONS a/k/a JEROME JERMAINE*
*CLEMONS a/k/a JEROME J. CLEMONS*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 04/30/2015 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| TRIAL COURT ATTORNEY: | KATHRYN RAE McNAIR |
| COURT FROM WHICH APPEALED: | KEMPER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: BENJAMIN A. SUBER |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALICIA M. AINSWORTH |
| DISTRICT ATTORNEY: | BILBO MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/18/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE WALLER, C.J., KING AND MAXWELL, JJ.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1. A Kemper County jury found Jerome Clemons guilty of felony driving under the influence (DUI), and he was sentenced to serve five years in the custody of the Mississippi Department of Corrections. He now appeals to this Court, arguing that the jury's verdict was against the overwhelming weight of the evidence. Finding no error, we affirm.

**FACTS & PROCEDURAL HISTORY**

¶2.    On July 5, 2013, at around 10:30 p.m., Officer Louis McDade of the DeKalb Police Department was performing a routine night patrol in Kemper County when he noticed a white vehicle without a car tag traveling south on Highway 39. Officer McDade decided to follow the vehicle.  The vehicle came to a stop at the intersection of Highway 39 and Highway 16. The driver initiated the vehicle's right blinker, indicating a turn to the west, but the vehicle ultimately turned left, heading east on Highway 16. Officer McDade continued to follow the vehicle onto Highway 16 and watched as the vehicle hit the fog line on the road four or five times within a space of one hundred yards. At this point, Officer McDade initiated a traffic stop. The vehicle did not pull all the way off the road.

¶3.    Upon approaching the stopped vehicle, Officer McDade recognized the driver as Jerome Clemons.[1]  Officer McDade called Clemons's license information in to his dispatcher and was informed that Clemons's license was suspended. At this point, Clemons appeared to be leaning toward the passenger-side of the car, as if to stay away from the open driver-side window. Officer McDade smelled the strong aroma of alcohol coming from Clemons's vehicle, so he asked Clemons to exit the vehicle.  Clemons began to argue with Officer McDade, and Officer McDade noticed that the smell of alcohol began to get stronger. Officer McDade explained that Clemons had several outstanding traffic violations and asked him again to exit his vehicle. Clemons eventually complied.  Upon exiting the vehicle, Clemons exhibited slurred speech and

_____

[1] Officer McDade testified that he knew Clemons "based on prior contact with [him]."

bloodshot eyes, and he was swaying and stumbling in his efforts to stand. Officer McDade again smelled a strong aroma of alcohol on Clemons's breath.

¶4. Officer Thomas Justin Thomas arrived as backup to assist Officer McDade during his investigation of Clemons. Officer Thomas conducted a pat-down of Clemons. Officer McDade then arrested Clemons for several traffic violations, including driving with a suspended license, and informed Clemons that he was suspected of driving under the influence of alcohol. Officer McDade then took Clemons to the Kemper County Jail to perform a series of sobriety tests, explaining that the jail was a safer environment in which to conduct the tests.

¶5. At the Kemper County Jail, Officer McDade conducted a breath test on Clemons with the Intoxilyzer 8000, but he was unable to obtain a reading. The machine printed two different error codes, the first stating that there was an "ambient fail," and the second stating "interferent detected." After these failures, Officer McDade asked Clemons to perform the "one-leg stand" test and the "walk-and-turn" test. Officer McDade noted at least three indicators for intoxication during each of these tests. At this point, Officer McDade concluded that Clemons had been driving under the influence of alcohol. Because Clemons had two prior DUIs on his record, Officer McDade charged him with "DUI - 3rd," which is a felony. *See* Miss. Code Ann. § 63-11-30(2)(c) (Rev. 2013).

¶6. Clemons's trial commenced on January 6, 2015. Clemons proceeded pro se, but the trial court appointed attorney Kathryn McNair to assist him. At trial, Officer McDade testified concerning his interactions with Clemons on the night in question and offered his opinion that Clemons had been driving under the influence of alcohol. Officer Thomas testified that while

he was assisting Officer McDade with his investigation, he could not understand Clemons because his speech was so slurred. He also corroborated Officer McDade's testimony that Clemons's breath smelled strongly of alcohol. Officer Thomas stated that Clemons swayed and stumbled as he patted him down, and again when he propped him against his vehicle after the pat-down. Officer Thomas noticed that Clemons's eyes were droopy and bloodshot. According to Officer Thomas, all of these factors served as evidence that Clemons was driving under the influence of alcohol.

¶7.    Wendy Hathcock, a forensic scientist in the Implied Consent Section of the Mississippi Crime Laboratory, testified regarding the Intoxilyzer tests performed on Clemons. Hatcock explained that her primary responsibility is the Intoxilyzer 8000, and she routinely performs maintenance and calibrations on these machines. Hathcock reviewed the records of the Intoxilyzer machine used on Clemons and located the two error messages that Officer McDade encountered.  She testified that the presence of these error messages meant that no reading was taken from Clemons's breath sample. Hathcock then explained that an "ambient fail" message means that there was a substance in the air, such as alcohol or another chemical, which prevented the machine from taking a clean air sample. Hathcock stated the "interferent detected" error likely meant that a radio or cell phone signal was interfering with the machine.

¶8.    Clemons testified in his own defense.  He stated that he was driving through DeKalb, Mississippi, in the area where Highways 16 and 39 intersect, at around 10:30 p.m. on the night in question. He testified that he noticed a police officer parked in the parking lot of a funeral home near this intersection. Clemons was driving to the Brittany Apartments, but he was

4

unable to enter because the apartment complex has a 10:00 p.m. curfew. He then turned around and began driving south on Highway 39. He testified that he was driving to a gas station when he was pulled over by Officer McDade. He claimed that Officer McDade never performed a field sobriety test on him.

¶9.     Clemons also called Lieutenant Ellis Smoot, a corrections officer at the Kemper County Jail, as a witness. Smoot booked Clemons on the night of his arrest. He testified that Clemons asked him to look at the results of his first Intoxylizer test, which apparently showed a reading of "0.00 BrAC." Smoot admitted that he was not very familiar with the Intoxylizer machine, and Officer McDade had explained to him that the test was "irrelevant" because the machine was not working correctly. Smoot also testified that he did not remember seeing Officer McDade perform any field sobriety tests on Clemons at the jail. However, he clarified that he is allowed to leave the booking room whenever an officer is present and that it was possible that he had left the room while the sobriety tests were being performed.

¶10.    At the conclusion of trial, the jury found Clemons guilty of driving under the influence of alcohol. The trial court sentenced Clemons to five years' imprisonment and ordered him to pay $3,893.50 in fines and fees.  On appeal, he argues that the trial court erred in denying his motion for a new trial because the jury's verdict was against the overwhelming weight of the evidence.

## STANDARD OF REVIEW

¶11.    "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush v. State*, 895 So. 2d 836, 844 (Miss. 2005) (citing *Herring v. State*, 691 So. 2d 948, 957 (Miss. 1997)).  The evidence must be weighed in the light most favorable to the jury's verdict.  *Id.* If the verdict is against the overwhelming weight of the evidence, the proper remedy is to grant a new trial, but this remedy should be used only in exceptional cases where the evidence "preponderates heavily against the verdict." *Id.* (citing *McQueen v. State*, 423 So. 2d 800, 803 (Miss. 1982)).

## DISCUSSION

**Whether the trial court erred in denying Clemons's motion for a new trial because the verdict was against the overwhelming weight of the evidence.**

¶12.    On appeal, Clemons argues that he is entitled to a new trial because he and Lieutenant Smoot contradicted Officer McDade's opinion that he was driving under the influence of alcohol.  Specifically, he points to Smoot's testimony that his first Intoxylizer test registered a reading of zero. He also argues that there is no video evidence of the traffic stop, and that there is no evidence corroborating Officer McDade's testimony that he conducted a field sobriety test.

¶13.    Clemons was convicted of violating Section 63-11-30(1)(a) of the Mississippi Code, which makes it "unlawful for any person to drive or otherwise operate a vehicle within this state" who is "under the influence of intoxicating liquor[.]" Miss. Code Ann. § 63-11-30(1)(a)

6

(Rev. 2013). This subsection "comes into play primarily in those instances where there were no accurate test results, where an individual tested below the . . . level [at which point one is deemed per se to be in violation of the DUI law], . . . or where a DUI test has been refused." *Leuer v. City of Flowood*, 744 So. 2d 266, 268 (Miss. 1999). The phrase "under the influence," as used in this subsection, is "commonly understood to mean driving in a state of intoxication that lessens a person's normal ability for clarity and control." *Id.* at 269 (citing *Gov't of Virgin Islands v. Steven*, 134 F.3d 526, 528 (3d Cir. 1998)). "This common understanding is consistent with the obvious purpose of drunk driving statutes; i.e., to prevent people from driving unsafely due to an alcohol-induced diminished capacity." *Steven*, 134 F.3d at 528.

¶14. Viewing the evidence in the light most favorable to the verdict, we find that the jury's verdict is not contrary to the weight of the evidence. This Court has found that evidence of "slurred speech, bloodshot eyes, or erratic driving" can constitute sufficient evidence of impairment to support a conviction under Section 63-11-30(1)(a). *Evans v. State*, 25 So. 3d 1054, 1059 (Miss. 2010). *See also Leuer*, 744 So. 2d at 269 (defendant drove his car into the middle of the roadway, smelled strongly of alcohol, and had glassy eyes and difficulty speaking); *Gilpatrick v. State*, 991 So. 2d 130, 133 (Miss. 2008) (defendant swerved and crossed center line before colliding with another vehicle; witnesses testified to the presence of alcohol in the defendant's vehicle; and the defendant smelled strongly of alcohol); *Young v. State*, 119 So. 3d 309, 316 (Miss. 2013) (defendant drove past officers at a road block and "flipped them off," argued with and threatened officers, smelled strongly of alcohol, and had

empty beer cans in his car); ***Moore v. State***, 151 So. 3d 200, 203 (Miss. 2014) (defendant exhibited slurred speech and bloodshot eyes and smelled of alcohol, and he could not walk to the officer's vehicle without aid). In this case, the State presented evidence that Clemons used his right-turn indicator at an intersection before making a left turn, hit the fog line multiple times within a short distance, and failed to move his car completely off the road when he was pulled over by Officer McDade. At the scene of the traffic stop, Clemons exhibited slurred speech, bloodshot eyes and poor balance, and he smelled strongly of alcohol. Finally, Clemons failed two field sobriety tests. While Clemons claims that Officer McDade did not actually perform any field sobriety tests on him, this conflict in the testimony was resolved in the State's favor by the jury, which has the duty to weigh the credibility of the witnesses and their testimony. ***Flowers v. State***, 144 So. 3d 188, 196 (Miss. 2014).

¶15. Similarly, the jury was warranted in finding McDade to be a more credible witness than Smoot regarding Clemons's Intoxylizer results. Smoot admitted that he was unfamiliar with the operation of the Intoxylizer, and both McDade and Hathcock explained that the Intoxylizer did not produce a reading from Clemons's breath sample on the night in question. Viewed in the light most favorable to the verdict, the weight of the evidence supports the jury's finding that Clemons was guilty of driving under the influence of alcohol. We find that upholding the verdict would not constitute an unconscionable injustice.

**CONCLUSION**

¶16. For the foregoing reasons, we affirm Clemons's conviction and sentence.

¶17. **CONVICTION OF FELONY DUI AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS,**

8

**AFFIRMED. APPELLANT SHALL PAY A FINE OF $2,000, $500 VCF, $10 VBF, $1,000 APPEARANCE BOND FEE, AND COURT COSTS IN THE AMOUNT OF $383.50 FOR A TOTAL SUM DUE OF $3,893.50. APPELLANT SHALL BE GIVEN CREDIT FOR 481 DAYS SERVED ON THIS CHARGE. APPELLANT SHALL REPORT TO THE KEMPER COUNTY CIRCUIT COURT WITHIN THIRTY (30) DAYS OF RELEASE FROM CUSTODY TO ARRANGE FOR PAYMENT OF ALL SUMS ORDERED HEREIN, AND SHALL COMPLY WITH SAID PAYMENT ARRANGEMENT OR BE CITED FOR CONTEMPT OF COURT. PAYMENT IN FULL OF ANY SUM OWED SHALL BE A CONDITION OF ANY EARLY RELEASE. ANY CASH BOND POSTED BY THE APPELLANT IS FORFEITED AND SHALL BE APPLIED TO SUMS DUE.**

**DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, KING, COLEMAN, MAXWELL AND BEAM, JJ., CONCUR.**